MILLER KORZENIK SOMMERS RAYMAN LLP
David S. Korzenik
Terence P. Keegan
488 Madison Avenue, Suite 1120
New York, New York 10022-5702
(212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com

MANDELL MENKES LLC
Steven P. Mandell (admitted *pro hac vice*)
Steven L. Baron (admitted *pro hac vice* )
1 North Franklin Street, Suite 3600
Chicago, Illinois 60606
(312) 251-1000
smandell@mandellmenkes.com
sbaron@mandellmenkes.com

*Attorneys for Defendant Blick Art Materials, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR ANDREWS, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>BLICK ART MATERIALS, LLC,<br><br>      Defendant. | No. 1:17-cv-00767-JBW-RLM<br><br>Honorable Jack B. Weinstein |

**<u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

## INTRODUCTION

Defendant does not seek to "isolate and segregate blind persons from its website service," as Plaintiff badly asserts in his opposition to Defendant's motion to dismiss. (Plaintiff's Opposition ("Opp.") at 20.) In fact, Defendant's website offers features that are accessible through a screen reading software for individuals like Plaintiff who are sight-impaired. First, Plaintiff does not articulate how Defendant's website has prevented Plaintiff from enjoying the goods and services of Defendant's stores. Second, Plaintiff concedes in his Opposition that the DOJ has promulgated no regulations that address website accessibility. Defendant has not violated the ADA because there are no specific, technical requirements for website accessibility. The only violation alleged by Plaintiff relates to Defendant not being in compliance with WCAG's guidelines – guidelines that have not been adopted by the DOJ (except in private agreements). Regardless, as one court has noted, businesses such as Defendant's should not have to read "legislative tea leaves" to determine whether they comply with the ADA.[1] By allowing Plaintiff to proceed with his claims based on this alleged violation would undeniably violate Defendant's due process rights. Moreover, this Court can (and should) refrain from exercising jurisdiction because the DOJ is the agency with the authority to promulgate regulations on this very issue. Until the DOJ issues final rules, there is no guidance for courts in determining whether the ADA has been violated. For any of one these reasons, Plaintiff's Complaint should be dismissed.

**I.   Whether websites are public accommodations under the ADA is a matter of first impression in Second Circuit**

Contrary to Plaintiff's argument, the Second Circuit has not directly addressed whether a website, such as the one in this case, would be considered a "place of public accommodation"

---

[1] *Robles v. Dominos Pizza LLC*, No. CV 16-06599 SJO, 2017 U.S. Dist. LEXIS 53133, *16 (C.D. Cal. Mar. 20, 2017) (citation omitted).

1

under Title III of the Americans with Disabilities Act ("ADA"). The Second Circuit, in finding that insurance underwriting is regulated by Title III, stated that the statutory language "suggests to us that [the ADA] was meant to guarantee . . . more than physical access." *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999). Based on this statement, Plaintiff asks this Court to find that Title III applies broadly to Defendant's website because it "offers services of its public accommodation via the Internet." (Opp. at 5.) The *Pallozzi* holding, which involved no website accessibility, does not support such a broad interpretation of Title III.[2] First, as highlighted by the *Pallozzi* court, the ADA specifically references insurance underwriting in the safe harbor provision of Section 501(c). *Id.* at 32; 42 U.S.C. § 12201(c). Moreover, in making its finding, the Second Circuit acknowledged other Circuits require there be a nexus to the physical space. Although not a determinative factor in the court's holding, the *Pallozzi* court found there was a nexus between the physical space and underwriting because the plaintiffs were purchasing the policy from the insurance office – a physical location. *Id.* at 32, Fn. 3.

Although the Second Circuit in *Pallozzi* found a nexus between the service offered to the plaintiffs and the physical location, Plaintiff still argues that "Defendant's website is a public accommodation in its own right." (Opp. at 7.)[3] "While there is some disagreement amongst the district courts on this question [of whether websites are governed by the ADA], it appears the majority of courts agree websites are not covered by the ADA *unless* some function on the website hinders the full use and enjoyment of a physical space." *Gomez v. Bang & Olufsen Am.,*

---

[2] The court's holding in *Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015) also does not support Plaintiff's interpretation. The *Scribd* court addressed whether a business's website with no physical retail outlet or building open to the public can be a place of public accommodation under Title III. The *Scribd* holding is inapposite to the facts of this case. Unlike *Scribd*, Defendant operates brick and mortar retail locations.

[3] This position also contradicts Plaintiff's later statement that "the DOJ's interpretation that a website *with a nexus to a physical place* should be given" deference. (Opp. at 13.) (Emphasis added).

2

*Inc.*, Case No. 1:16-cv-23801, 2017 U.S. Dist. LEXIS 15457, *8 (S.D. Fla. February 2, 2017) (emphasis added). (Plaintiff's Memorandum ("Mem.") at 6, 7.) "[T]he ADA does not require places of public accommodations to create full-service websites for disabled persons." *Id.* at *12-13. As the *Gomez* court correctly recognized, courts should not legislate from the bench. It is up to Congress to amend the ADA to define website as a place of public accommodation. "All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar [sic] store." *Id.* at *13. In *Gomez*, the plaintiff was solely using the website to purchase goods online and have them delivered to his home. *Id.* at *12. Because there was no nexus between the website and the services offered at the brick-and-mortar store, the *Gomez* court dismissed the complaint.[4] *Id.* at *13. Here, like the plaintiff in *Gomez*, Plaintiff has failed to allege the inaccessibility of Defendant's website denies him the ability to enjoy the services of Defendant's brick-and-mortar stores.[5] For this reason, this Court should dismiss the Complaint.

---

[4] A California district court also recognized there must be a nexus between the goods and services offered on the website with the physical store. N*ational Federation of the Blind v. Target Corp*., 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006) (finding plaintiffs stated a claim "to the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores," but dismissed "to the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores, the plaintiffs fail to state a claim under Title III of the ADA.")

[5] Defendant's website is not an integral part of its in-store experience. For example, there is no "Ship to store" or "order on-line pick up in store" functionality. The only thing Defendant's website does for its retail stores is give the location and number. The only thing Defendant's stores do for the website is have the web address on merchandise bags and allow returns of merchandise purchased online. *See* http://www.dickblick.com/.

## II. DOJ Is Not Entitled To Deference Based On Statements Of Interest And Consent Decrees

### A. There are no regulations for the DOJ to interpret

Plaintiff argues that the DOJ's Statements of Interest and Consent Decrees are entitled to deference. (Opp. at 12, citing to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) and *Moeller v. Taco Bell Co. J.*, No. 02-cv-5849, 2007 U.S. Dist. LEXIS 60714 (N.D. Cal. Aug. 8, 2007). Plaintiff's reliance on these cases is misplaced. In *Moeller*, the court (in a footnote) gave deference to the DOJ's interpretation – standards that the DOJ had in fact promulgated. *Moeller*, 2007 U.S. Dist. LEXIS 60714, *34, Fn. 18. The court recognized that "[a]n agency's interpretation of its own regulations is 'controlling' unless it is 'plainly erroneous or inconsistent with the regulation.'" *Id.* Here, Plaintiff admits "the DOJ has not expressly adopted specific website guidelines . . . ." (Opp. at 16.) Moreover, Plaintiff is not asking this Court to defer to the DOJ's Statements of Interests and Consent Decrees to determine that the WCAG guidelines should be applied. Rather, Plaintiff is only seeking deference as to the DOJ's position that websites are covered by Title III. (Opp. at 13.) The crux of this case, however, is whether Defendant's website must comply with a non-governmental organization's website accessibility guidelines to be in compliance with the ADA. The answer here is no.

### B. WCAG guidelines have not been sanctioned by courts

Plaintiff argues that the DOJ and federal courts have sanctioned the use of WCAG 2.0 as the standard for website accessibility. This contention – as to federal courts – is simply not true. Plaintiff misleads this Court by stating Judge Oetken, in *Del-Orden v. Outback Steakhouse of Florida*, No. 16-cv-2319 (S.D.N.Y. September 13, 2016), found that the WCAG 2.0 Level AA guidelines are the appropriate standard. (Opp. at 14.) In fact, the court's order (Dkt. No. 13) merely adopted, verbatim, plaintiff's counsel's description of the terms of a settlement between

4

the parties. The issue of WCAG 2.0 Level AA guidelines was never the subject of contested motion practice and Judge Oetken did not address on the merits of whether WCAG 2.0 guidelines carry the force of law.

Not a single court has held that WCAG 2.0 reflects the standard by which websites must abide to comply with the ADA. Plaintiff admits that the DOJ has not expressly adopted specific website guidelines, but argues that "[e]ven if the Court believes that WCAG 2.0 is not the legal standard, *per se*, at the bare minimum, Defendant is still required to allow reasonable accessibility to allow blind consumers to reasonably navigate the website." (Opp. at 17.) This argument not only raises concerns regarding Defendant's due process rights, addressed below, but also seeks to have this Court legislate from the bench in violation of the basic concept of separation of powers. Plaintiff has failed to present any authority that Defendant must comply with the WCAG guidelines.[6] This alone is a basis to dismiss Plaintiff's Complaint.

### III. Defendant's Due Process Rights Will Be Violated If Plaintiff's Complaint Is Not Dismissed

Plaintiff fails to directly address Defendant's argument that requiring Defendant to comply with a non-governmental organization's guidelines as opposed to binding DOJ regulations promulgated through orderly rulemaking procedures violates Defendant's right to due process. Plaintiff does not (and cannot) dispute that the DOJ has promulgated no regulations for websites that define what is required to comply with the ADA. Instead, Plaintiff relies on DOJ Statements of Interest and Consent Decrees. Essentially, Plaintiff's position that these

---

[6] The DOJ has issued extensive regulations regarding physical access to brick-and-mortar stores. As one example (of many) retail stores such as Defendant's stores are required to comply with specific requirements for individuals to access shelves and displays. The width of the accessible route should be at least 36 inches with a slightly larger space provided at the ends. If a 180 degree turn is needed to exit an area, then a 60 inch diameter turning space or a 42 inch wide "T" is needed. *See* U.S. Department of Justice, 2010 ADA Standards, *http://www.ct.gov/brs/lib/brs/pdfs/adastandards2010.pdf*, at pp. 90-91. Without these types of specific, concrete regulations governing the website accessibility, Defendant has no notice of whether its website is governed by and in compliance with the ADA.

5

Statements of Interest and Consent Decrees are "regulations" requires companies to read "legislative tea leaves" to determine what standards are applicable. *Robles*, 2017 U.S. Dist. LEXIS 53133, *16 (citation omitted). (See Mem. 7, 10, 14, 15.) Unlike the specific requirements that apply to Defendant's physical stores (*e.g.* stores aisles must be at least 36" wide), Plaintiff can only point to vague guidelines set by a non-governmental entity as to what private entities might be required to meet.

*Robles* – a decision which Plaintiff completely ignores - is directly analogous. In *Robles*, plaintiff alleged that Dominos' website does not permit a user to complete purchases using screen-reading software. 2017 U.S. Dist. LEXIS 53133, *2. Dominos argued, among other things, that the lawsuit violates its due process rights because the ADA and the DOJ's guidelines are silent on the accessibility standards that apply to private websites. *Id.* at *4. The *Robles* court agreed with Dominos and held that Dominos due process rights would be violated if the court gave deference to the DOJ's position on website accessibility standards set forth in Statements of Interest filed in other lawsuits and consent decrees or settlement documents entered between private parties. *Id.* at *17-18. Here, Plaintiff points to two of the same settlement documents that were relied upon by the *Robles* plaintiff: (1) consent decree in *Nat'l Fed. of the Blind, et al, United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*, Case No. 1:13-cv-10799-GAO and (2) Peapod settlement agreement. (Opp. at 16.) The *Robles* court found these two settlements "highlight, rather than dispel, the vagueness concern . . . and demonstrate why a lack of formal guidance in this complex regulatory arena places those subject to Title III in the precarious position of having to speculate which accessibility criteria their websites and mobile applications must meet." *Id.* at *22-23. In the Peapod settlement, the parties agreed that the defendants would conform their websites to WCAG 2.0 Level AA

whereas in the HRB settlement, defendants agreed to comply with the WCAG 2.0 Level AA and A Success Criteria.  *Id.* at *23.

Based on the inconsistency of standards used in the settlement agreements, Defendant cannot (and should not have to) determine what accessibility standards, if any, should apply to its website.  The DOJ, in a Statement of Interest, acknowledged that "in light of inconsistent court decisions on website-related obligations and differing technical standards for determining web accessibility, further guidance is warranted." (*See* Opp. at Ex. B at 5.)  Because there are no clear guidelines on website accessibility standards, Defendant's due process rights will only be protected if Plaintiff's Complaint is dismissed.

### IV.   The Court Should Apply the Primary Jurisdiction Doctrine

Plaintiff contends that the "current statute has provided all the authority necessary to hold Defendant Blick Art accountable" and this issue is "legal in nature." (Opp. at 19, 20.)  Yet, neither the statute nor DOJ regulations require Defendant's website to be in compliance with WCAG 2.0.  Plaintiff seems to believe that the Court's expertise may be used in this matter.  But, this is not a case where the Plaintiff is simply asking this Court to interpret a statute.  Plaintiff argues that Defendant is in violation of the ADA because its website does not comply with guidelines created by W3C, a third party.  Plaintiff's argument that the issue is "legal in nature" ignores the fact that over seven years ago the DOJ sought feedback regarding whether the DOJ should adopt the WCAG 2.0 Level AA Success Criteria as its standard for website accessibility and the DOJ still has not determined the standard.  *See Robles*, 2017 U.S. Dist. LEXIS 53133, *23-24.   The DOJ announced, however, that it "expects to publish the title III web site accessibility NPRM during fiscal year 2018."  *See Department of Justice (DOJ)-Fall 2015,*

*Statement of Regulatory Priorities*, 80 Fed. Reg. 77709, 77807 (Dec. 15, 2015).[7] In order to avoid the risk of inconsistent rulings, this Court should decline to exercise jurisdiction. For this independent reason, this Court should dismiss the Complaint.

## CONCLUSION

For all of the foregoing reasons, Defendant Blick Art Materials, LLC respectfully requests that the Court dismiss the Complaint with prejudice, and in its entirety, for failure to state a claim. In the alternative, Defendant requests that the Court dismiss or stay the case under the primary jurisdiction doctrine pending the issuance of the DOJ's website accessibility regulations.

Dated: June 6, 2017

Respectfully submitted,

By: /s/ Steven L. Baron

David S. Korzenik
Terence P. Keegan
MILLER KORZENIK SOMMERS RAYMAN LLP
488 Madison Avenue, Suite 1120
New York, New York 10022-5702
(212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com

Steven P. Mandell (admitted *pro hac vice*)
Steven L. Baron (admitted *pro hac vice*)
MANDELL MENKES LLC
1 North Franklin Street, Suite 3600
Chicago, Illinois 60606
(312) 251-1000
smandell@mandellmenkes.com
sbaron@mandellmenkes.com

*Attorneys for Defendant Blick Art Materials, LLC*

---

[7] *But see National Ass'n of the Deaf v. Harvard Univ.*, Case No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121, *66-67 (Feb. 9, 2016). At the time of this decision, the court noted the DOJ was 2 years away from publishing its Notice of Proposed Rulemaking. It has been 16 months since this decision and the DOJ is significantly closer to issuing its Notice of Proposed Rulemaking in 2018.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing document was served via CM/ECF on June 6, 2017 on all counsel of record who have consented to electronic service.

/s/Steven L. Baron